R. Jeremy Adamson (12818)
Taylor J. Smith (17537)
**KUNZLER BEAN & ADAMSON, PC**
50 West Broadway Ste 1000
Salt Lake City Utah 84101
Telephone: (801)994-4646
*jadamson@kba.law*
*tsmith@kba.law*

*Attorneys for Plaintiff Nursa, Inc.*

> If you do not respond to this document within applicable time limits, judgment could be entered against you as requested.

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NURSA, INC., a Delaware corporation,<br><br>　　Plaintiff,<br><br>v.<br><br>OPTIMA CARE JERSEY CITY LLC dba OPTIMA CARE HARBORVIEW, a New Jersey limited liability company; and DOES I–X,<br><br>　　Defendants. | **COMPLAINT**<br><br>Civil Case No. 2:24-cv-00843<br><br>Judge: _____<br><br>Magistrate Judge: _____ |

Plaintiff Nursa, Inc. ("**Plaintiff**" or "**Nursa**"), by and through counsel, alleges and complains against Defendants Optima Care Jersey City LLC dba Optima Care Harborview and Does I–X (collectively, "**Harborview**") as follows:

### PRELIMINARY STATEMENT

1. This is an action by Nursa for collection of unpaid invoices and fees, which collection arises from Harborview's failure to satisfy its payment obligations under the *Nursa*<sup>TM</sup> *Terms of Service Agreement* (the "**Agreement**" or "**TSA**"), attached hereto as **Exhibit 1**, it

accepted and agreed to upon commencing use of Nursa's services.

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

## VENUE

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district and under 28 U.S.C. § 1404 because the parties have already contractually consented to venue in this district. *See Agreement* §§ 15.6; 20.1.

## PARTIES

4. Nursa, Inc. is a Delaware corporation with its principal place of business in Murray, Utah.

5. Upon information and belief, Optima Care Jersey City LLC is a New Jersey limited liability company, which entity operates a facility under the dba Optima Care Harborview with its principal place of business in Jersey City, New Jersey.

6. Upon information and belief, the sole managing member and member of Optima Care Jersey City LLC is Eric Mendel, who, upon information and belief, is an individual domiciled in New York.

7. Upon information and belief, Does I–X are individuals or entities, which may be identified through discovery that are or may be liable for the causes of action described herein, and which are not located or domiciled in the state of Delaware or Utah.

## STATEMENT OF FACTS

*The Agreement*

8. Nursa is a software company that connects healthcare facilities with healthcare workers (or clinicians) operating as independent contractors. *Id.* §§ 3.2; 7.1; 7.2; 8.6.

9. Through Nursa's App (the "**App**"), a facility can post one-off job-shifts that need to be filled by a clinician. *Id.* §§ 1.2; 1.3; 1.6; 3.1.

10. A clinician can then apply for a particular job posting, and if the facility is satisfied with the clinician's credentials, it can hire the clinician for the shift. *Id.* §§ 1.2; 1.3; 1.6; 3.1.

11. An individual using the App on behalf of a facility warrants that they have authority to enter the agreement on the facility's behalf. *Id.* § 2.1.

12. When a user takes such actions, Nursa understands and relies on the representation, both functional, and as described in the TSA that the individual taking such action with the App warrants that they have authority to enter the TSA on the facility's behalf.

13. Once that individual clicks "I Agree," uses the App, signs or acknowledges the agreement, or creates a profile in the App, the facility enters and is bound by the Agreement. *Id.* § 2.2.

14. Under the Agreement's terms, a facility cannot assert that the binding nature of the Agreement is ineffectual because it was executed in electronic form. *Id.* § 2.2.

15. In order to access and utilize Nursa's services, a healthcare facility must consent to the Agreement, which describes each party's obligations and the expectations for payment.

16. A facility cannot create a profile, post shifts, or otherwise use the App without viewing and agreeing to the Agreement.

17. An individual cannot access or use the App without first accepting the TSA by clicking "I Agree" on the page where the terms are presented to the user.

18. Once that individual clicks "I Agree," uses the App, signs or acknowledges the TSA, or creates a profile in the App, Nursa considers the facility to be bound by the TSA, and complies with its obligations under the TSA accordingly.

19. In entering the TSA, the facility agrees to submit itself to Utah law and "to the jurisdiction of the state and federal courts in Salt Lake County, Utah," and "that said courts have the sole and exclusive jurisdiction over any and all disputes and causes of action involving such Party that arise out of or relate to this Agreement or its performance." *Id.* § 20.1.

20. When a shift is posted on the App, Nursa presents the facility with an estimated charge the amount for which varies depending on (among other things) the current demand, timing, and type of service requested. *Id.* §§ 7.3; 8.2; 8.8.

21. Each time a job is posted, the facility is responsible for understanding current pricing and agrees to the estimated charge. *Id.* §§ 7.3; 8.2; 8.8.

22. Once a clinician has successfully completed and reported a shift, Nursa provides the report to the facility. *Cf. id.* §§ 1.7; 7.3; 8.2; 8.8.

23. Under the Agreement, the facility is obligated to verify each shift report. *Id.* § 8.2.

24. The facility can verify a shift manually or can opt to allow the shift to be verified automatically if it does not manually verify a shift within 48 business hours of receiving a report. *Id.*

25. Per the Agreement, "[a]ny such auto-verified Shift Report shall be deemed accepted by the Facility as true and correct." *Id.*

26. Once a shift report has been verified as described above, Nursa finalizes the charges, pays the clinician for the work completed, and invoices the facility. *Cf. id.* §§ 1.7; 7.3; 8.2; 8.8.

27. Once a charge has been verified and invoiced, the facility is obligated to satisfy that payment under the terms of the Agreement. *Id.* § 8.8; 8.9.

28. If the facility disagrees with the contents of an invoice, it must report those errors, omissions, or corrections "within thirty (30) days of the Shift's completion. After thirty days, all Charges shall be deemed correct, accurate, and without objection." (the "**30-Day Period**"). *Id.* § 8.8.

29. Failure to pay triggers a monthly late fee of 1.5% of the unpaid balance, multiplied against the bill balance and compounded daily. *Id.* § 8.9.

30. When a healthcare worker fulfills a shift that was facilitated through the App, Nursa acts as the financial intermediary by paying that worker for the shift and invoicing the facility.

31. Every party must keep its respective obligations under the Agreement—because invoices are based on verified shifts, for which Nursa has already paid, if a facility refuses to pay its invoices, then it essentially receives free work from the clinician, and Nursa is left to foot the bill. *See id* §§ 1.7; 7.3; 8.2; 8.8.

*Harborview's Use of the App and Acceptance of the Agreement*

32. Harborview began using the App to offer shifts pursuant to the Agreement.

33. As anticipated, Harborview posted shifts, clinicians selected shifts, Harborview approved the clinicians, and the clinicians worked the shifts.

34. Each week, Nursa sent Harborview an invoice for services rendered, which

5

constituted the shift report contemplated in the Agreement.

35. Harborview manually verified many shifts and allowed many other shifts to be auto-verified.

36. On the first of each month, Nursa provided Harborview with a monthly statement providing a list of all outstanding invoices, including the total outstanding balance.

37. Harborview never contested its invoices or reported any errors, omissions, or corrections within the 30-Day Period.

38. Ultimately, Harborview stopped making payments on its invoices.

39. Because of Harborview's failure to pay, Nursa terminated Harborview's access to the App, as was its right under the Agreement. *Id.*, §§ 2.2; 2.3; 9.1.

40. As of October 29, 2024, Harborview owed an outstanding principal balance of $697,651.85 and had accrued $84,386.52 in late fees, for a total outstanding balance of $782,038.37, plus interest, compounding daily.

41. Nusa attempted to resolve this matter informally, but Harborview ultimately refused to respond to Nursa's requests for payment.

42. Despite Harborview's verification of shift reports, both manually and through the Agreement's auto-verification process, and despite Harborview's assent to the invoices—as demonstrated by Harborview's failure to notify Nursa of any objections, errors, omissions, or corrections within the 30-Day Period—Harborview has continually refused to acknowledge the legitimacy of this dispute and to pay these outstanding balances and late fees.

43. Under the agreement, Nursa is now entitled to litigate this matter to recover the amounts owed. *See Agreement*, §§ 7.3; 8.2; 8.8; 15.6.

44. Under the agreement Nursa is entitled to reimbursement for all expenses and costs incurred in collecting the debt, including attorney fees. *See Agreement*, §§ 8.9; 23.1.

### FIRST CAUSE OF ACTION
### Breach of Contract

45. Nursa hereby repeats and incorporates by reference the preceding paragraphs as if fully set forth herein.

46. The Agreement is a valid and enforceable contract between Nursa on one hand, and Harborview on the other.

47. Nursa has fulfilled its obligations under the Agreement.

48. Harborview materially breached the Agreement when it failed to pay amounts owed for services rendered and for late payments.

49. As a result of Harborview's breach of contract, Nursa has been damaged in an amount to be determined, but in no case less than $782,038.37 plus interest, as provided in the Agreement.

50. Nursa is entitled to an award for its damages of $782,038.37 plus interest, as provided in the Agreement, along with its attorney fees and costs, as provided in the Agreement.

### SECOND CAUSE OF ACTION
### Breach of the Covenant of Good Faith and Fair Dealing
(*In the Alternative*)

51. Nursa hereby repeats and incorporates by reference the preceding paragraphs as if fully set forth herein.

52. Inherent in the Agreement is an implied covenant of good faith and fair dealing in which each party promised that it would not conduct itself in a way that could interfere with the other party's ability to benefit from the Agreement.

53. Harborview made this promise and accepted this duty by entering the Agreement.

54. Harborview's refusal to pay the amounts owed, including amounts it does not dispute, is contrary to the mutually understood purpose of the agreement and Nusa's reasonable expectations and reliance.

55. As a result of Harborview's breach of the covenant, Nursa has been damaged in an amount to be determined, but in no case less than $782,038.37 plus interest, as provided in the Agreement.

56. Nursa is entitled to an award for its damages of $782,038.37 plus interest, as provided in the Agreement, along with its attorney fees and costs, as provided in the Agreement.

## THIRD CAUSE OF ACTION
### Contract Implied in Fact
(*In the Alternative*)

57. Nursa hereby repeats and incorporates by reference the preceding paragraphs as if fully set forth herein.

58. Harborview requested that Nursa perform work, by creating a profile and using the Nursa App to post shifts to be filled by clinicians.

59. Nursa expected to be compensated for any services provided, and expressly demonstrated and conveyed that expectation by presenting estimated charges to Harborview each time Harborview posted a shift on the App, and by drafting and publishing Terms of Service that were presented to and provided to Harborview when it used the App.

60. Harborview knew or should have known that Nursa expected to be compensated as demonstrated by the publication and presentation of the TSA, the presentation of estimated charges for posted shifts, and the subsequent invoices.

61. Moreover, Harborview knew or should have known of Nursa's expectation of compensation as demonstrated because it did, in fact, approve of the TSA and agreed to be bound thereby, because it used the App repeatedly, and because it approved shift reports, whether manually or automatically.

62. As a result of the contract implied in fact, Nursa expected to be compensated by Harborview in an amount to be determined, but in no case less than $782,038.37 plus interest, as provided in the Agreement.

63. Nursa has been damaged by Harborview's refusal to pay that amount in recompence for the benefit provided.

64. Nursa is entitled to an award for its damages of $782,038.37 plus interest, as provided in the Agreement, along with its attorney fees and costs, as provided in the Agreement.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment
(*In the Alternative*)

65. Nursa hereby repeats and incorporates by reference the preceding paragraphs as if fully set forth herein.

66. Nursa conferred a benefit on Harborview by providing access to the App.

67. Harborview knew of and accepted that benefit by using and continuing to use the App to post shifts and hire clinicians to meet its needs.

68. Harborview failed to compensate Nursa for the benefits provided.

69. As such, Harborview's acceptance and use of the benefits provided by the App would be inequitable if Nursa does not receive the value for the services provided.

70. Nursa conferred a benefit on Harborview in an amount to be determined, but in no

case less than $782,038.37 plus interest, as provided in the Agreement.

71. Nursa has been damaged by Harborview's refusal to pay that amount in recompence for the benefit provided.

72. Nursa is entitled to an award for its damages of $782,038.37 plus interest, as provided in the Agreement, along with its attorney fees and costs, as provided in the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Nursa requests judgment against Harborview as follows:

a. That Harborview shall pay $782,038.37 plus interest, as provided in the Agreement, to Nursa, to compensate Nursa for Harborview's breach of the Agreement;

b. That Harborview shall alternatively pay $782,038.37 plus interest, as provided in the Agreement, to Nursa, to compensate Nursa for Harborview's breach of the covenant of good faith and fair dealing inherent in the Agreement;

c. That Harborview shall alternatively pay $782,038.37 plus interest, as provided in the Agreement, to Nursa, to compensate Nursa for its expected benefit from the contract implied in fact between Nursa and Harborview;

d. That Harborview shall alternatively pay $782,038.37 plus interest, as provided in the Agreement, to Nursa, to compensate Nursa for the enrichment Nursa provided, that Harborview has received at Nursa's expense and without providing return value;

e. That Harborview shall additionally pay other consequential, compensatory, economic, and equitable damages as applicable;

f. That Harborview shall additionally pay interest, including prejudgment and post-judgement interest, on the foregoing sums;

   g. That Harborview shall additionally pay, as provided in the Agreement and additionally as allowable by law, any and all expenses, costs, and attorney fees Nursa has incurred in connection with its attempts to collect this payment, including this lawsuit; and

   h. That the Court award such other and further relief as it deems just and proper.

DATED: November 8, 2024

               **KUNZLER BEAN & ADAMSON, PC**

               */s/ R. Jeremy Adamson*
               R. Jeremy Adamson
               Taylor J. Smith

               *Attorneys for Nursa, Inc.*