# THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| NURSA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>OPTIMA CARE JERSEY CITY LLC dba OPTIMA CARE HARBORVIEW, a New Jersey limited liability company; and DOES I–X,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:24-cv-00843-RJS-JCB<br><br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

## INTRODUCTION[1]

Before the court are three motions from Defendant Optima Care Jersey City, LLC dba Optima Care Harborview ("Optima") and two motions from Plaintiff Nursa, Inc. ("Nursa"). Optima seeks leave to file a third-party complaint;[2] to extend the time for fact discovery;[3] and to stay proceedings until the court completes its review of pending motions.[4] Nursa opposes these motions and forwards two of its own: a motion for sanctions for Optima's alleged failure

---

[1] District Judge Robert J. Shelby referred this case to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(A). ECF No. 12.

[2] ECF No. 48.

[3] ECF No. 49.

[4] ECF No. 67.

to comply with a court order,[5] and a motion for attorney's fees[6] pursuant to the same court order.[7]

For the reasons stated below, the court denies Optima's motions to file a third-party complaint, amend the scheduling order, and stay deadlines; the court grants in part and denies in part Nursa's motion for sanctions; and the court grants Nursa's motion for attorney's fees.

### BACKGROUND[8]

The Nursa software application ("app") provides a platform for healthcare facilities with staffing needs to connect with clinicians looking for work.[9] As Nursa explains it, Nursa pays the clinician after a clinician works a shift facilitated through the app and later sends an invoice to the facility to recoup Nursa's costs.[10] Nursa claims that it helped fill shifts at Optima, and that Optima owes it $782,038.37, plus interest, for shifts staffed through the app.[11]

Nursa initiated this action in November 2024.[12] The next month, Nursa alleged that Optima had failed timely to respond to the complaint[13] and obtained an entry of default from the Clerk of Court.[14] The parties jointly moved the court to set aside the entry of default and extend

---

[5] ECF No. 55.

[6] ECF No. 56.

[7] ECF No. 52.

[8] The court recites these facts as they are found in Nursa's complaint. They are provided as background and without comment as to their validity.

[9] ECF No. 1 at ¶ 8-10.

[10] ECF No. 1 at ¶ 30.

[11] ECF No. 1 at ¶¶ 32-33, 40.

[12] ECF No. 1.

[13] ECF No. 9.

[14] ECF No. 10.

the time for Optima to answer Nursa's complaint.[15] Optima then filed an answer that denied the thrust of Nursa's claims and asserted that Optima had outsourced its staffing needs to a third party called Healthcare Staffing & Consultants, LLC ("HSC").

In late October, Nursa filed a motion for summary judgment.[16] Shortly after, Nursa filed a motion to compel discovery alleging that Optima "refuses to participate in this litigation" and had "adamantly delayed discovery."[17] Optima opposed and then withdrew its opposition to this motion.[18] The court granted the motion, ordered Optima to respond to all written discovery requests and produce all responsive documents by a date certain, and awarded Nursa attorney's fees unless Optima submitted briefing showing that Nursa was not entitled to those fees.[19] Optima submitted no such briefing and, according to Nursa's unopposed motion for sanctions, did not comply with the court order regarding discovery production.[20]

The court begins with Optima's motions for leave to file a third-party complaint and to amend the scheduling order. The court then addresses Nursa's motions for sanctions and attorney's fees before addressing Optima's motion to stay pending deadlines.

---

[15] ECF Nos. 19 and 11.

[16] ECF No. 30.

[17] ECF No. 36 at 1-2.

[18] ECF Nos. 44 and 46.

[19] ECF No. 52.

[20] ECF No. 55 at 2.

ANALYSIS

**I.   The Court Denies Optima's Motion for Leave to File a Third-Party Complaint Because It Is Untimely and Granting the Motion Would Prejudice Nursa.**

Fed. R. Civ. P. 14 provides that a defendant may "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer."[21] Rule 14 "should be liberally construed to effectuate its intended purposes."[22] "The purpose of Rule 14 is to 'accomplish in one proceeding the adjudication of the rights of all persons concerned in the controversy and to prevent the necessity of trying several related claims in different lawsuits.'"[23] Courts consider the following factors to guide their discretion in evaluating a motion for leave to file a third-party complaint:

> (1) the benefits of a single action versus prejudice to the other party and confusion, (2) the timeliness of the request and prejudice to the plaintiff in delay, (3) whether the main case would unnecessarily expand in scope, (4) whether impleading new parties would unduly delay or complicate the trial, and (5) whether the third-party plaintiff's motion states sufficient grounds for the court to evaluate the propriety of third-party complaints.[24]

---

[21] Fed. R. Civ. P. 14(a)(1).

[22] *United States v. Acord*, 209 F.2d 709, 712 (10th Cir. 1954).

[23] *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1498 (10th Cir. 1983) (citation modified) (quoting *Goodrich v. Burlington Northern Railroad Co.*, 701 F.2d 129, 130 (10th Cir. 1983)).

[24] *Sun Prods. Corp. v. Lock & Load Indus. LLC*, No. 2:11-CV-316-CW-PMW, 2012 WL 293397, at *3 (D. Utah Jan. 31, 2012) (quoting *Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan v. Willard,* 216 F.R.D. 511, 514 (D. Kan. 2003)).

4

Ultimately, however, the "granting of leave for a defendant to prosecute a third party proceeding under Rule 14 rests in the sound discretion of the trial court."[25]

Turning to the first enumerated factor, the court weighs the benefits of incorporating into one action all claims regarding the funds at issue against the prejudice to Nursa of adding another party at this stage of the litigation. The court finds it significantly likely that the third-party complaint would cause "prejudice to the other party and confusion."[26] If the court allows the third-party complaint, Nursa would be forced to begin discovery against an entirely new party when it has already moved for summary judgment against the existing defendant. Also, the issues likely would become confused, with a claim regarding Nursa's contract with Optima competing for judicial attention with a newly brought claim about Optima's contract with HSC. The third-party complaint would require the court to ascertain the validity of multiple contracts between multiple parties under different legal schemes instead of the relatively straightforward contract action now at bar. This factor favors denying leave to file a third-party complaint.

Timeliness likewise is on Nursa's side. Optima is arguably correct when it states that it filed its motion before the deadline to join additional parties expired,[27] which suggests that Optima's motion is timely. However, Optima filed the motion nearly 11 months after filing its first answer, wherein Optima states multiple times that it "outsourced its staffing needs" to

---

[25] *First Nat. Bank of Nocona v. Duncan Sav. & Loan Ass'n*, 957 F.2d 775, 777 (10th Cir. 1992) (finding no abuse of discretion where "district judge denied the motion to bring in the third party defendant, finding that the defendant Duncan had not been timely in its request and that plaintiff Nocona should not be prejudiced by that delay").

[26] *Sun Prods. Corp.*, 2012 WL 293397, at *3.

[27] Optima filed its motion at 2:34 a.m. December 20, 2025, when the deadline to join additional parties was December 19, 2025.

HSC, the proposed third-party defendant.[28] At minimum, Optima knew for nearly one year that HSC may have been responsible to it for the funds Nursa seeks from Optima, and therefore that HSC was a potential third-party defendant. Optima's decision to wait to file this motion until more than two hours after the last possible minute renders the motion untimely. This factor weighs against granting leave to file a third-party complaint.

The prejudice to Nursa and lateness of Optima's motion are dispositive as to the motion, but the court notes that two of the other factors also cut in Nursa's favor. If the third-party complaint were allowed, the case would unnecessarily expand to encompass disputes about a contract only tangentially related to the underlying dispute. This likely would unduly delay proceedings, given that fact discovery closed in December 2025 and a motion for summary judgment is pending. For these reasons, the court denies Optima's motion for leave to file a third-party complaint.

## II.   The Court Denies Optima's Motion to Amend the Scheduling Order for Lack of Good Cause.

Fed. R. Civ. P. 16 provides that a "schedule may be modified only for good cause and with the judge's consent."[29] "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'"[30] "'In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the

---

[28] ECF No. 18 at ¶¶ 20, 31-33.

[29] Fed. R. Civ. P. 16(b)(4).

[30] *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)).

diligence of the party seeking amendment.'"[31] A court exercising its discretion is likely to find good cause where "'the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party.'"[32] Although the risk of prejudice to the nonmoving party is another relevant consideration, "'the focus of the inquiry is upon the moving party's reasons for seeking modification.'"[33] "'Mere failure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation' also 'should not be considered good cause.'"[34]

Optima seeks to amend the scheduling order to extend the deadline for fact discovery.[35] In support of this motion, Optima argues that it "tried to make [the agreed-upon deadline] work, but has determined that [it] needs additional time for fact discovery so that it can lodge an adequate defense."[36] Optima states that the parties did not start active discovery efforts until June 2025 and that Nursa agreed to extend the fact discovery deadline to December 19, 2025, but would extend it no further.[37] Nursa argues in response that "Optima's behavior in this

---

[31] *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1021 (10th Cir. 2018) (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011)).

[32] *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (quoting 3 James Wm. Moore, Moore's Federal Practice - Civil § 16.14[1][b] (3d ed. 2019)).

[33] *Id.* (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

[34] *Id.* at 989 (quoting *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 105 (D.D.C. 2005)).

[35] ECF No. 49.

[36] ECF No. 49 at 2. Optima additionally argues that the extended time would support its pursuit of the third-party complaint it wishes to file. *Id.* As the court has denied Optima's motion for leave to file a third-party complaint, the court does not consider this argument.

[37] *Id.*

litigation bears all the hallmarks of a litigation strategy based on delay."[38] Optima did not file a reply brief.

Optima does not offer any argument that it has either acted diligently in this matter or that it seeks an extension of fact discovery because new information has come to its attention. In fact, the record shows the opposite. The court set aside an entry of default once Optima started participating in this action three months after Nursa filed its complaint. In its motion filed hours after the fact discovery deadline expired, Optima argues that it "tried to make this work" but found that the agreed-upon deadline did not provide enough time to complete fact discovery.[39] This is not newly discovered information. The schedule entered in March 2025 set the deadline for fact discovery to close more than eight months later, in November 2025.[40] At the end of October, the parties moved to amend the schedule and agreed that December 19, 2025, would be the fact discovery deadline.[41] None of this should have been a surprise to Optima. Optima's inability to meet a previously set deadline and its failure to file a motion requesting an extension before the deadline elapsed strongly suggest a lack of diligence. A lack of diligence does not demonstrate good cause. "'Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.'"[42]

As to Optima's argument that an extension of fact discovery would support its proposed third-party complaint, that argument fails not just because the court denied Optima's motion to

---

[38] ECF No. 54 at 2.

[39] ECF No. 49 at 2.

[40] ECF No. 24 at 6.

[41] ECF No. 32. The operative schedule is docketed at ECF No. 34.

[42] *Tesone*, 942 F.3d at 989 (citation modified) (quoting *Johnson,* 975 F.2d at 609).

file a third-party complaint. In January 2025, Optima named proposed third-party defendant HSC in its answer, but Optima waited until two hours after the expiration of the December 2025 deadline to seek to file a third-party complaint against HSC. At best, this behavior suggests a self-created scheduling crisis brought upon by Optima's penchant for waiting until the last minute to act. That is far from good cause. Because Optima's motion does not demonstrate good cause, the motion to amend the scheduling order is denied.

**III.    The Court Grants in Part and Denies in Part Nursa's Motion for Sanctions Because Optima Failed to Comply With the Court's Discovery Order.**

Nursa moves pursuant to Fed. R. Civ. P. 37(b)(2)(A) for an award of sanctions for Optima's failure to comply with the court's order granting Nursa's discovery motion ("Discovery Order").[43] For the reasons stated below, the court grants in part and denies in part the motion for sanctions. Although Optima failed to comply with the Discovery Order, Optima's behavior does not warrant dispositive sanctions without the prior warning included here.

A.  Legal standards

Nursa requests sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i), (ii), (vi), and (vii) and Fed. R. Civ. P. 37(b)(2)(C). Rule 37(b)(2)(A) provides that if a party "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Such "further just orders" may include, as relevant here:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

---

[43] ECF No. 55.

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> . . .
>
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.[44]

Rule 37(b)(2)(C) provides that, "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

"[D]istrict courts enjoy 'very broad discretion to use sanctions where necessary to insure that lawyers and parties fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial.'"[45] "[T]he determination 'of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make.'"[46] "The district court's discretion to choose a sanction is limited in that the chosen sanction must be both 'just' and 'related to the particular "claim" which was at issue in the order to provide discovery.'"[47] To guide its discretion in determining the appropriateness of sanctions, a court

---

[44] Fed. R. Civ. P. 37(b)(2)(A)(i)-(ii), (vi)-(vii).

[45] *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011) (citation modified) (quoting *In re Baker*, 744 F.2d 1438, 1440 (10th Cir.1984)).

[46] *Villanueva Echon v. Sackett*, 809 F. App'x 468, 471 (10th Cir. 2020) (quoting *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992)).

[47] *Ehrenhaus*, 965 F.2d at 920 (quoting *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)).

must consider the factors set forth in *Ehrenhaus v. Reynolds*.[48] The *Ehrenhaus* factors are: (1) the degree of actual prejudice to the non-offending party; (2) the amount of interference with the judicial process; (3) the culpability of the disobedient party; (4) whether the court warned the disobedient party in advance that default judgment would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.[49] Although courts generally use the *Ehrenhaus* factors to evaluate whether to impose dispositive sanctions, the Court of Appeals for the Tenth Circuit has also used the *Ehrenhaus* factors to evaluate the imposition of non-dispositive sanctions.[50]

B.  Analysis

Nursa requests that the court deem certain facts as established; prohibit Optima from entering evidence related to Nursa's unanswered discovery request; prohibit Optima from engaging in additional discovery; enter default judgment for an amount certain; hold Optima in contempt of court; and order Optima to pay the reasonable attorney's fees and costs that Nursa

---

[48] *See id.* at 921; *see also Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013) ("To determine if a sanction such as dismissal or default judgment is appropriate, courts should consider [the *Ehrenhaus* factors].."); *Royal Mfg Co, L.P. v. IXL Premium Lubricants*, No. 1:16-CV-00050-PMW, 2018 WL 1918602, at *2-3 (D. Utah Apr. 20, 2018) (considering *Ehrenhaus* factors to determine whether entry of default judgment was an appropriate sanction under Rule 37(b)(2)(A)(vi)).

[49] *Ehrenhaus*, 965 F.2d at 921.

[50] *Villanueva Echon*, 809 F. App'x at 472-73 (finding no abuse of discretion where district court applied *Ehrenhaus* factors to assess appropriateness of non-dispositive sanctions and noting "while *Ehrenhaus* lists five factors that a court should consider before imposing *dispositive* sanctions, we did not 'restrict trial courts to a consideration of these factors in only those cases which involve dispositive sanctions.'") (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 102 (D. Colo. 1996)) (emphasis in original)).

incurred due to Optima's failure to participate in discovery and comply with the Discovery Order.[51]

The court first examines its Discovery Order, then applies the *Ehrenhaus* factors. The court then considers Nursa's requests for dispositive and potentially dispositive sanctions before addressing Nursa's requests to hold Optima in contempt of court, prohibit additional discovery, and order Optima to pay Nursa's reasonable costs and attorney's fees.

1. Optima's Violation of the Discovery Order is Sanctionable Under Rule 37 Because the Discovery Order is an Order to Provide Discovery.

A court may impose sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A) where a party "fails to obey an order to provide or permit discovery." The Discovery Order required Optima to "respond to all written discovery requests and produce all responsive documents on or before 5:00 p.m. on December 31, 2025."[52] As the Discovery Order required Optima to "provide or permit discovery," violation of the Discovery Order is sanctionable under Rule 37(b)(2)(A).

Nursa states that Optima did not provide any additional discovery responses by the deadline the court set in the Discovery Order.[53] Optima does not oppose the motion for sanctions and has not communicated anything to the court suggesting that it produced the discovery as required. Accordingly, the court accepts Nursa's allegation as true and finds that Optima failed to produce the discovery material as required by the Discovery Order. Optima therefore violated the Discovery Order.

---

[51] ECF No. 55 at 2-5.

[52] ECF No. 52.

[53] ECF No. 55 at 2.

2.  The *Ehrenhaus* Factors Support the Imposition of Non-Dispositive Sanctions Against Optima for Failing to Comply with the Court's Discovery Order.

The first and second *Ehrenhaus* factors require assessing the impacts that Optima's actions had on Nursa and the court. The record shows that Optima's unwillingness to participate in discovery prejudiced Nursa. Nursa not only was left without the information it requested to construct its case; it was forced to prod Optima to produce what the law required Optima to produce. In litigation, parties may have to cajole or at least remind each other to produce requested discovery, and often the other side is left with less than what it wants. That, perhaps unfortunately, is litigation. That Nursa had to chase Optima for its discovery responses is not itself terribly prejudicial. What is prejudicial, however, is that Optima entirely refused to respond to Nursa's first set of interrogatories and requests for production, even after the court ordered it to do so.[54] Nursa did its part to move the litigation along in the face of Optima's recalcitrance. Nursa reports that it sought and had several conversations with Optima about discovery production, stipulated to multiple schedule extensions (though not for the durations requested by Optima), and eventually filed a motion with this court to compel production of the disputed discovery.[55] The court views the first factor in Nursa's favor because Optima delayed Nursa's ability to litigate its case, increased Nursa's costs, and required Nursa to hound Optima for discovery responses.

As to interference with the judicial process, Optima's disregard for the court's Discovery Order—just like any party's disregarding of a court order— undermines the court's ability to

---

[54] ECF No. 55 at 2 n.1.

[55] ECF No. 36.

accomplish its mission. "If [a party] could ignore court orders here without suffering the consequences, then the district court cannot administer orderly justice, and the result would be chaos."[56] Additionally, Optima "unreasonably multiplied proceedings by imposing a burden on [Nursa] and the court to respectively file and consider several motions" to compel discovery, for attorney's fees, and for sanctions.[57] Indeed, Optima's "noncompliance restricted [Nursa's] access to discovery and unnecessarily occupied [Nursa's] and the district court's time with motions . . . , which interfered with the judicial process."[58] The court also views the second factor in Nursa's favor.

The third factor is the culpability of the litigant. Optima is responsible for its failure to abide by the court's Discovery Order and to produce discovery material as required. However, the record does not reveal whether these failures were willful. Optima's lack of participation could have been accomplished through simple negligence rather than bad faith. Nursa claims that Optima's litigation strategy has "adamantly delayed discovery," which suggests willful, bad-faith delay tactics.[59] There are facts that support this inference. Most obviously, Optima did not respond to many of Nursa's first discovery requests. Optima also, according to Nursa, said it would perform in certain ways and then failed to live up to its word.[60] And Optima filed a

---

[56] *Ehrenhaus*, 965 F.2d at 921 (citation modified).

[57] *Villanueva Echon*, 809 F. App'x at 473.

[58] *Id.*

[59] ECF No. 36 at 2.

[60] *Id.* at 2-3.

motion to add a third party to this action on the last day it could do so where there seems to be no reason the motion could not have been filed months earlier.[61]

However, there are also facts that support the view that Optima acted merely negligently. First, the overall schedule to which Optima agreed was not overly lengthy; many other cases have schedules that set deadlines further into the future than what the parties stipulated to here.[62] Additionally, Optima's counsel claims she had difficulty communicating with her client and sought to withdraw from the case due to this and other difficulties.[63] Lastly, some of Optima's briefing was filed two or three hours after a midnight deadline and included typos and repeated words, suggesting a slapdash approach rather than a nefarious plan to delay. The court views Optima as culpable in its failure to produce discovery, but the court stops short of finding that Optima acted willfully or in bad faith to delay these proceedings. This factor supports the imposition of sanctions, but, without more, does not support a dispositive sanction.

Regarding the fourth factor, Optima was not specifically warned that entry of default judgment was a possible sanction for its failure to comply with the court's Discovery Order.[64] Although the court ordered Optima to produce the requested discovery, the court did not mention the possibility of default judgment.[65] This factor weighs against entry of dispositive sanctions.

---

[61] ECF No. 48.

[62] ECF No. 22 set the first deadline for fact discovery to close one year after the complaint was filed and the dispositive motion deadline seven months later. The operative schedule at ECF No. 34 kept the dispositive motion deadline and delayed the close of fact discovery by one month.

[63] ECF No. 60.

[64] *See generally* ECF No. 52.

[65] *Id*.

Finally, the fifth factor to consider is whether lesser sanctions than dismissal would be "likely to deter the errant party from further misconduct."[66] Nursa requests a handful of alternative sanctions, such as imposing fees and costs, that the court is inclined to grant before dispatching with the case entirely. The court finds the imposition of the severe sanction of default judgment not warranted because lesser sanctions would likely be effective, it is not clear Optima acted in bad faith, and Optima was not warned that the case could be dismissed for failure to comply with the Discovery Order. Given that entry of default judgment as a sanction is "a weapon of last, rather than first, resort,"[67] this factor supports the imposition of lesser-than-dispositive sanctions.

Having considered the *Ehrenhaus* factors, the court finds that the first and second clearly cut in Nursa's favor; the third shows Optima bears some level of culpability, but not enough to warrant the harshest sanctions; the fourth factor weighs against imposing dispositive sanctions; and the fifth factor supports the imposition of lesser sanctions.

    3.   <u>The Court Declines to Grant Dispositive or Potentially Dispositive Sanctions Against Optima</u>.

Nursa requests that the court enter default judgment against Optima pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi), deem certain facts as established pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i), and prohibit Optima from entering evidence related to Nursa's unanswered discovery requests pursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii). Default judgment is a dispositive

---

[66] *Ehrenhaus*, 965 F.2d at 920.

[67] *Id.* (citation modified).

sanction, and the court views the latter two sanctions as potentially dispositive because they could prove fatal to Optima's claims or defenses.[68]

A dispositive sanction "should be used as a weapon of last, rather than first, resort."[69] "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is [default judgment] an appropriate sanction."[70] The aggravating factors here, largely recounted in the *Ehrenhaus* analysis above, do not outweigh the judicial system's predisposition to resolve cases on their merits. Optima may have willfully refused to comply with the court's order out of a bad-faith attempt to delay proceedings. But it is also possible that Optima has merely neglected this litigation. The outcome is the same in terms of prejudice to Nursa and the court, but the ambiguous degree of culpability counts against imposing the harshest sanction.[71] So, too, does the fact that the court did not explicitly warn Optima that the court might enter default judgment against it for its failure to comply.[72]

---

[68] *See, e.g.*, ECF No. 55 at 2 ("[Nursa] requests that the Court enter an immediate order . . . deeming the following facts as established . . . a. Optima has no evidence to support its affirmative defenses.").

[69] *Ehrenhaus*, 965 F.2d at 920 (citation modified).

[70] *Id.* at 921 (citation modified).

[71] *Stenson v. Edmonds*, 86 F.4th 870, 878 (10th Cir. 2023) ("A district court may use dismissal as a sanction only when the discovery violation arises out of 'willfulness, bad faith, or some fault of the party.'" (citation modified) (quoting *Archibeque v. Atchison, Topeka and Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995))).

[72] *Villanueva Echon*, 809 F. Appx at 470-473 (finding no abuse of discretion where district court deemed certain facts established at summary judgment to sanction defendants after magistrate judge four times told defendants they must adhere to same rules as represented parties and three times ordered defendants to respond to the plaintiffs' discovery requests); *see also Max Int'l, LLC*, 638 F.3d at 1324 ("[W]here, as here, the record shows that a party failed to comply with a document request and two court orders compelling production of materials within the party's control, we are convinced a district court does not abuse its discretion by dismissing the case or entering default as sanction.").

Optima is to be sanctioned for disobeying a court order. Although sanctions are warranted, the harshest sanctions are not. Consider the impact if the court were to deem as established, *e.g.*, that "Optima is responsible for paying for use of the [a]pp" or that "Optima has no communications with any third party that could refute the idea that Optima, and no one else, was obligated to pay for Optima's use of the [a]pp."[73] Deeming these facts established at this stage of the litigation, as Nursa requests, would have significant implications for Optima's defenses and Nursa's claims. So too would prohibiting Optima from "entering evidence related to the questions or content contained in Nursa's First Set of Interrogatories, Requests for Production, and Requests for Admission."[74] Although Optima faces an uphill battle if it seeks later in this litigation to rely on evidence it failed to produce as required,[75] the court declines to set an outright bar at this stage. The court notes that disregarding a court order is a serious transgression that will not occur without consequence. However, the court at this juncture declines to doom Optima's entire case through factual determinations that are the functional equivalent of dispositive sanctions.

Based upon the court's analysis of the *Ehrenhaus* factors, the court finds that dispositive and potentially dispositive sanctions are not warranted. Accordingly, the court denies Nursa's motion for those types of sanctions. However, the court notes that its reluctance to use "a

---

[73] ECF No. 55 at ¶¶ 1(k), (p).

[74] ECF No. 55 at ¶ 2.

[75] *See* Fed. R. Civ. P. 37(c).

weapon of last . . . resort" should not be taken as an endorsement of Optima's actions.[76] In fact, the opposite is true, and the court admonishes Optima for disregarding a court order.

> 4. The Court Grants in Part and Denies in Part Nursa's Motion for Non-Dispositive Sanctions.

Nursa requests that the court hold Optima in contempt of court pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vii) for Optima's failure to obey the Discovery Order; prohibit Optima from engaging in additional discovery, including against third parties and beyond the set discovery deadline, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii); and order Optima to pay the reasonable attorney's fees and costs that Nursa incurred due to Optima's failure to participate in discovery and comply with the Discovery Order, pursuant to Fed. R. Civ. P. 37(b)(2)(C).[77] For the reasons discussed below, the court denies Nursa's motion to hold Optima in contempt of court, finds as moot Nursa's request to prohibit Optima from engaging in additional discovery, and grants Nursa's motion to order Optima to pay Nursa's reasonable fees and costs.

> a. The Court Denies Nursa's Motion to Hold Optima in Contempt for Failing to Obey the Discovery Order.

The court notes at the outset that Rule 37(b) does not reference *holding* a party in contempt, but rather "*treating* as contempt of court the failure to obey" a discovery order.[78] The court accepts Nursa's unopposed assertion that Optima failed to comply with the court's Discovery Order. However, the court is unwilling to treat Optima's action as contempt of court without Optima having an opportunity to show cause that the finding of contempt is not

---

[76] *Ehrenhaus*, 965 F.2d at 920.

[77] ECF No. 55 at 4-5.

[78] Fed. R. Civ. P. 37(b)(2)(a)(vii) (emphasis added).

warranted.[79] Without an overt display of willful bad faith, and without Optima having been afforded an opportunity to speak to the matter, the court declines to treat Optima's actions as contemptuous. However, any future disregard of a court order in this action likely will not be met with the same restraint. For these reasons and the court's belief that the imposition of monetary sanctions will be sufficient to deter Optima from acting similarly in the future, the court denies Nursa's motion to hold Optima in contempt pursuant to Rule 37(b)(2)(a)(vii).

b. The Court Finds as Moot Nursa's Motion to Prohibit Optima From Engaging in Additional Discovery and Orders Optima to Pay Nursa's Reasonable Fees and Costs Caused by Optima's Failure to Comply with the Discovery Order.

Nursa requests that the court enter an order "prohibiting Defendant from engaging in additional discovery, including with or against third parties" and "prohibiting Defendant from engaging in additional fact discovery past December 19, 2025."[80] The court previously denied Optima's motions to file a third-party complaint and to amend the scheduling order.[81] These denials render Optima unable to engage in additional discovery. Accordingly, the court finds as moot Nursa's request that the court impose these sanctions for Optima's failure to comply with the court's Discovery Order.

---

[79] *See* 28 U.S.C. § 636(e)(6)(B) (providing that a magistrate judge exercising contempt authority under 28 U.S.C. § 636(b)(1)(A) must certify facts to a district judge, who then holds a show-cause hearing to determine whether the actions are contemptuous and, if so, the appropriate punishment).

[80] ECF No. 55 at ¶¶ 3-4.

[81] ECF Nos. 48 and 49.

The court in the subsequent section addresses Nursa's motion for attorney's fees related to its short form discovery motion.[82] Here, the court addresses fees associated with Optima's failure to comply with the Discovery Order.[83] Based on its review of the *Ehrenhaus* factors, the court determined that sanctions lesser than dismissal are appropriate. The court finds that ordering Optima to pay Nursa's fees and costs associated with the Discovery Order is "likely to deter the errant party from further misconduct."[84] Accordingly, the court awards Nursa its reasonable costs and fees associated with the preparation of its motions related to Optima's failure to comply with the Discovery Order. That includes Nursa's motion for sanctions;[85] its motion for attorney fees;[86] and, upon briefing demonstrating relatedness, other work Nursa has performed arising from Optima's failure to comply with the Discovery Order.

Attorney's fee sanctions under Rule 37(b)(2)(C) are compensatory, not punitive; they are the fees and costs "caused by the failure" of the party that failed to obey the court.[87] The court orders Nursa to submit briefing within 14 days after the date of this order detailing the costs and fees it incurred that were caused by Optima's failure to obey the Discovery Order, and to

---

[82] ECF No. 36.

[83] ECF No. 52.

[84] *Ehrenhaus*, 965 F.2d at 920.

[85] ECF No. 55.

[86] ECF No. 56.

[87] *L v. Nat'l Collegiate Athletic Ass'n*, 134 F.3d 1438, 1443 (10th Cir. 1998) (finding a sanction that included a twenty-five percent surcharge above plaintiffs' actual costs to be a criminal contempt sanction because it was neither compensatory nor avoidable by complying with the court's order).

include in this briefing the information the court requires to conduct the lodestar analysis discussed below.[88]

   C.  The Court Warns Optima That Further Noncompliance Will Result in Additional Sanctions, Potentially Including Entry of Default Judgment.

There are two key factors supporting the court's decision not to impose the harshest sanctions for Optima's disregard of the Discovery Order: (1) It is unclear whether Optima acted in bad faith or out of sheer negligence; and (2) Optima was not warned that default judgment might be entered as a sanction for its noncompliance. Neither will protect Optima going forward. Any future noncompliance with this court's orders will be regarded as proof that Optima is acting willfully and in bad faith to undermine this action. Furthermore, Optima is hereby warned that future such actions will be met with more severe sanctions, up to and including entry of default judgment.

**IV.  The Court Grants Nursa's Motion for Attorney's Fees Pursuant to the Discovery Order Under Fed. R. Civ. P. 37(a)(5)(A).**

   A.  Legal Standards

Nursa moves this court for an award of attorney's fees related to pursuant to Fed. R. Civ. P. 37(a)(5)(A), local rule of civil practice DUCivR 54-1(a), and the court's Discovery Order.[89] Optima does not oppose this motion. Fed. R. Civ. P. 37(a)(5)(A) provides that if a motion such as Nursa's discovery motion is granted, "the court *must*, after giving an opportunity to be heard,

---

[88] The court notes that Nursa additionally requests the court order Optima to pay Nursa's fees and costs "incurred and caused by Defendant's failure to participate in discovery." ECF No. 55 at ¶ 7. The court denies this request except to the extent that this alleged "failure to participate in discovery" relates to Optima's failure to comply with the Discovery Order.

[89] ECF No. 56.

require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."[90] However, the court "must not order this payment" if certain conditions are present.[91] The court explained this in its Discovery Order as follows:

> Because the court has granted Nursa's Motion, Nursa is entitled to an award of its reasonable expenses, including attorney fees, incurred in connection with the Motion, unless Optima can demonstrate that (1) Nursa filed the Motion before attempting in good faith to obtain the discovery without court action; (2) Optima's nondisclosure, response, or objection was substantially justified, or (3) other circumstances make an award of reasonable expenses unjust.[92]

The court invited Optima to submit briefing demonstrating the existence of any of these conditions. Optima did not do so.

Once a court determines that a party is entitled to reasonable expenses, the court then must assess the reasonableness of the fees requested. The court uses the "lodestar" method to calculate an award of attorney's fees under Rule 37.[93] The court determines the lodestar by calculating the reasonable number of hours spent on the motion and multiplying that total by a

---

[90] Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).

[91] Fed. R. Civ. P. 37(a)(5)(A).

[92] ECF No. 52; *see also* Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

[93] *See, e.g.*, *Roadbuilders Mach. & Supply Co., Inc. v. Sandvik Mining & Constr. USA, LLC,* Case No. 2:22-CV-2331-HLT-TJJ, 2024 WL 757154 (D. Kan. Feb. 23, 2024) (calculating the reasonableness of fees under Rule 37(a)(5) using lodestar method); *Davis v. Dura-Line Corp.,* No. CIV-22-224-RAW-GLJ, 2023 WL 6129489 (E.D. Okla. Sept. 19, 2023) (calculating the reasonableness of fees under Rule 37(b)(2)(C) using lodestar method).

reasonable hourly rate.[94] The burden is on the party requesting attorney's fees to prove the amount of hours spent on the motion and the appropriate hourly rate.[95] Below, the court first examines the Rule 37 factors and then turns to the lodestar method.

    B.  <u>Nursa is entitled to its reasonable expenses, including attorney's fees, under Fed. R. Civ. P. 37(a)(5)</u>.

Optima failed to contest that Nursa was entitled to expenses. The court examines the record to determine whether such reasons exist. First, there is no indication that Nursa filed its discovery motion[96] before attempting in good faith to obtain the discovery without court action. Nursa states that its efforts included written communications and a telephone conversation, and that Optima canceled previously scheduled meetings and failed to live up to promises to produce documents.[97] Optima does not oppose this. Second, there is nothing to suggest that Optima's nondisclosure, response, or objection was substantially justified. Third, no other circumstances make an award of reasonable expenses unjust. Optima failed to comply with discovery deadlines, failed to oppose the short form discovery motion demanding production, and failed to oppose a motion for attorney's fees. Awarding fees is reasonable here. Accordingly, the court finds that Nursa is entitled to an award of its reasonable expenses, including attorney's fees, incurred in connection with filing its short form discovery motion.

---

[94] *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000) (citing *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998)).

[95] *Id.*

[96] ECF No. 36.

[97] *Id.* at 2-3.

C.  Applying the Lodestar Method, the Court Awards Nursa Reasonable Attorney's Fees in the Amount of $1,987.50.

To determine the reasonableness of Nursa's claimed fees, the court must assess the reasonableness of Nursa's claimed hours and hourly rates.

1.  Hours

In examining the hours that a movant claims to have worked, "the court considers: (1) whether the hours are supported by adequate billing records; (2) whether [the movant] has exercised billing judgment; and (3) whether the hours expended on each task are reasonable."[98]

a.  Billing records

"Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."[99]

Nursa submitted a declaration from attorney Taylor Smith ("Mr. Smith") in support of its motion for attorney's fees.[100] Mr. Smith declares that he spent 5.3 hours "perform[ing] legal services on behalf of Nursa as part of the current attorney fee award sought."[101] An exhibit to Mr. Smith's declaration lays out the specific tasks Mr. Smith accomplished in this time.[102] Mr. Smith has described the tasks he performed with enough particularity for the court to understand

---

[98] *Thomas v. Shields*, No. 2:24-MC-00181-RJS-JCB, 2024 WL 4267327, at *3 (D. Utah Sept. 23, 2024).

[99] *Case*, 157 F.3d at 1250.

[100] ECF No. 56-1.

[101] *Id*. at 4 of 9.

[102] *Id*. at 9 of 9.

the process he undertook to prepare the short form discovery motion. Accordingly, the court finds that Nursa's counsel has submitted sufficiently detailed billing records.

> b. Billing Judgment

The court next considers whether Nursa's counsel has "exercised billing judgment."[103] "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended. Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable."[104] Nursa's counsel has exercised adequate billing judgment. None of the tasks listed in Mr. Smith's declaration appear duplicative, unnecessary, or excessive.

> c. Reasonableness of Hours

The final task in this analysis is to determine the reasonableness of the hours expended on each task.[105] "The court 'approaches this reasonableness inquiry much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients.'"[106] The court asks "what hours a reasonable attorney would have incurred and billed in the marketplace under similar circumstances."[107] The "overriding consideration [is] whether the attorney's hours were 'necessary' under the circumstances."[108]

---

[103] *Case*, 157 F.3d at 1250.

[104] *Id.* (citation modified).

[105] *Id.*

[106] *Thomas,* 2024 WL 4267327, at *4 (D. Utah Sept. 23, 2024) (citation modified) (quoting *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998)).

[107] *Robinson*, 160 F.3d at 1281.

[108] *Id.*

In determining what is a reasonable time to perform a task, courts consider the *Case* factors, which require evaluating (1) "the complexity of the case," (2) "the number of reasonable strategies pursued," (3) "the responses necessitated by the maneuvering of the other side," and (4) "the potential duplication of services."[109] After analyzing these factors, the court additionally considers the dozen factors put forward in *Johnson v. Georgia Highway Express, Inc.*[110]

As to the first *Case* factor, this is not a complex issue. Nursa was faced with what it saw as a recalcitrant opposing litigant resisting discovery by delay. Nursa therefore filed a short form discovery motion to compel discovery production. Nothing is overly complicated about these circumstances, though to be sure the ordinary care and diligence in crafting the motion was required. Turning to the second factor, it does not appear that Nursa is seeking attorney's fees for pursuing any reasonable strategy other than the filing of the short form discovery motion. Nursa is not, for example, seeking to be reimbursed for the time it spent seeking to avoid filing the motion or communicating with Optima. Third, Optima's maneuvering, if any occurred, apparently consisted of asking for extensions and very slowly producing discovery materials, if it produced them at all. It appears that Mr. Smith's billed tasks include discussing discovery

---

[109] *Case* at 1250 (quoting *Ramos v. Lamm,* 713 F.2d 546, 554 (10th Cir.1983)).

[110] 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87 (1989) (stating that when considering the reasonableness of attorney's fees, the court should consider: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases).

strategy with two other attorneys to determine the procedure, scope, and necessity of the discovery motion, then confirming the "action plan" for the motion with a third attorney.[111] While there is no specific time linked to these conversations, they appear to be in line with an associate attorney's reasonable process for deciding whether to involve a federal court in a discovery dispute. Turning to the last *Case* factor, there seems to be little risk of duplicative services. Mr. Smith reports that he requested "assistance finalizing filings" and made several edits to the motion, but Nursa does not request fees for services provided by other attorneys related to the motion, such as writing a duplicative draft, providing filing assistance, or engaging in the above-referenced conversations.

Turning to the *Johnson* factors, the court considers first the time and labor required to write the motion. Weighing the requested 5.3 hours against the court's "own knowledge, experience, and expertise of the time required to complete similar activities,"[112] the court finds that this is a reasonable amount of time in which to draft a short form discovery motion. Second, this is not a matter of first impression, and as such does not require more time and effort than any other short form discovery motion. Third, the skill required to perform the legal service properly is no more than any other discovery motion, and perhaps less. Mr. Smith spends most of the motion recounting a timeline of alleged discovery transgressions before briefly summarizing Rule 37(a)(5). There is no in-depth legal reasoning, though there are many dates and times to accurately relay, and Mr. Smith recounts the record with specificity. Fourth, the court is unaware of any conflicts of interest presented by Mr. Smith taking this case, though

---

[111] ECF No. 56-1 at 9.

[112] *Johnson,* 488 F.2d at 717.

presumably he was prevented from working on other matters while preparing this motion. Fifth, as set out below, the stated rate of $375 per hour appears to be in line with hourly billing rates in Salt Lake City, Utah. Sixth, the court is unaware of the fee arrangement (*i.e.*, fixed or contingent) and accordingly does not consider this factor.[113] Seventh, it does not appear that this motion was such a priority that Mr. Smith was forced to delay or put aside his other work. While there was likely some urgency in filing the motion given Optima's alleged delay tactics, the motion was filed three weeks after an agreed-upon deadline had passed, as Mr. Smith notes. This suggests that Mr. Smith was able to write this motion reasonably on his own timeline. Eighth, the amount involved in this case is alleged to be $782,038.37 plus daily compounding interest.[114] Ninth, the court is unaware of Mr. Smith's area of specialization and is thus unable to determine whether Mr. Smith "may enjoy a higher rate for his expertise than others."[115] The court notes that Mr. Smith is an associate with the firm, but acknowledges that "[l]ongevity *per se* . . . should not dictate [a] higher fee," and a younger attorney "should not be penalized for only recently being admitted to the bar."[116] Tenth, there is nothing to indicate that this is an undesirable case or that being involved with the case would have a negative economic impact on Mr. Smith. Eleventh, the court is unaware of the nature and length of Mr. Smith's professional relationship with Nursa and accordingly does not consider this factor. Lastly, the

---

[113] The court notes that the U.S. Supreme Court in *Blanchard* clarified that, while the "presence of a pre-existing fee agreement may aid in determining reasonableness . . . , a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees." 489 U.S. at 93.

[114] ECF No. 1 at ¶ 40.

[115] *Johnson*, 488 F.2d at 719.

[116] *Id.*

court after considering award amounts in similar cases finds that the amount Mr. Smith requested is in line with what is customarily awarded.[117] Having considered these factors, the court finds that the 5.3 hours Mr. Smith claims to have worked on the motion is reasonable.

2. Hourly rate

Mr. Smith has the burden to prove that his requested $375 hourly rate is reasonable. To do so, he must "'produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"[118] "The focus must be on the 'prevailing market rate in the relevant community,'"[119] and "[t]he court may not use its own knowledge to establish the appropriate rate unless the evidence of prevailing market rates before the court is inadequate."[120]

---

[117] *See, e.g.*, *Active Energy Grp., PLC v. Scalzo*, No. 2:23-CV-00141-DBB-JCB, 2024 WL 3510310, at *3 (D. Utah July 22, 2024) (approving hourly rates of $425 and $450 as reasonable given counsels' experience and expertise); *Theo M. v. Beacon Health Options, Inc.*, No. 2:19-CV-00364-JNP-DBP, 2023 WL 4826771, at *6 (D. Utah July 27, 2023) (approving hourly rate of $500 given counsel's experience and expertise, noting that "because of rapid inflation after the COVID-19 [p]andemic, the cost of living in Utah has increased and $450 is a lower relative rate than it was in early 2021"); *Mrs. Fields Franchising, LLC v. MFGPC, Inc.*, No. 2:15-CV-00094-DAK, 2021 WL 5086377, at *8 (D. Utah Nov. 2, 2021) (finding rates below $500 in a contract dispute invoking the court's diversity jurisdiction "reasonable and consistent with local market rates."); *Thomas*, 2024 WL 4267327, at *5 (D. Utah Sept. 23, 2024) (approving hourly rates of $440 and $510 as "reasonable and commensurate with prevailing market rates for attorneys of similar skill, experience, and reputation").

[118] *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002) (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984)).

[119] *United Phosphorus*, 205 F.3d at 1234 (quoting *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998)).

[120] *Id.*; *see also Case*, 157 F.3d at 1257 ("Only if the district court does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate.").

Mr. Smith submitted a sworn declaration stating that he is familiar with legal fees charged in the area and that the fees sought and individual rates stated are reasonable compared to such rates.[121] However, this is the only proof Mr. Smith puts forward, and the declaration is silent as to the prevailing market rate for similar work. Therefore, the court must rely upon other factors, including its own knowledge, to set Mr. Smith's reasonable hourly rate.[122] Relying on

---

[121] ECF No. 56-1 at 4 of 9.

[122] *Case*, 157 F.3d at 1257 ("We do not mean to suggest that a plaintiff's attorney is automatically entitled to his or her normal market rate. Instead, the parties should submit, and the district court must consider, evidence of the hourly rate the attorneys would be able to charge if working in the [relevant] field."); *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1160 (10th Cir. 1990) ("A lawyer's customary billing rate is a relevant but not conclusive factor."), *abrogated on other grounds by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993); *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987) (affirming the district court's reduction of hourly rates because the law firm seeking attorney's fees "provided the court with documentation that showed only the prevailing market rates at [its] firm" and "did not submit any evidence that would show that its rates are representative of the prevailing market rates" in the relevant community); *Schmidt v. Cline*, 171 F. Supp. 2d 1178, 1181-82 (D. Kan. 2001) ("Defendant has failed to submit evidence of the prevailing rates charged by attorneys in Topeka with skill, experience[,] and reputation comparable to his own. . . . Where, as here, a district court does not have before it adequate evidence of prevailing market rates, the court may, in its discretion, use other relevant factors including its own knowledge to establish the rate." ); *Arjouan v. Cabre*, No. 1:17-cv-00782-PJK-JHR, 2018 WL 4571663, at *3 (D.N.M. Sept. 24, 2018) ("Given the lack of supporting evidence for the requested fees, the court holds that the fee should be reduced to reflect this deficiency and at the very least to bring the amount in line with the average for our region."); *Nero v. Am. Fam. Mut. Ins. Co.*, No. 11-CV-02717-PAB-MJW, 2013 WL 5323191, at *9 (D. Colo. Sept. 23, 2013) ("Defendant argues that the rates its attorneys charge are reasonable because they are the attorneys' normal billing rates. The fact that defendant's attorneys regularly charge the aforementioned rates is relevant to the reasonableness of the rates, but not dispositive. Defendant has not submitted evidence that the rate charged by [its counsel] is consistent with the rates charged by other attorneys with similar experience in the [relevant] area. Accordingly, because defendant has not provided any evidence in support of [its counsel]'s proposed rate, the [c]ourt will adjust [defendant's counsel]'s rate based on its own familiarity of the range of prevailing rates in the [relevant] market." (citation modified); *Gudenkauf v. Stauffer Commc'ns, Inc.*, 953 F. Supp. 1237, 1241 (D. Kan. 1997) (reducing the plaintiff's counsel's claimed hourly rates because they failed to submit evidence of the prevailing rates charged by attorneys litigating the same type of cases in the relevant community "with the skill, experience[,] and reputation comparable to their counsel").

its familiarity with the prevailing market rate in similar cases, the court finds the $375 rate to be reasonable and commensurate with prevailing market rates for attorneys of similar skill and experience.

### 3. Attorney's Fees Award

All that remains to determine the attorney's fees award is to multiply the reasonable hours by the reasonable hourly rate to determine a lodestar. Mr. Smith's reasonably worked 5.3 hours at the reasonable rate of $375 per hour. The product of these two numbers is $1,987.50. Therefore, the court awards Mr. Smith attorney's fees in the amount of $1,987.50.

### D. Costs.

Under both Rule 37(a)(5) and this court's Discovery Order, Nursa is entitled to costs as well as attorney's fees. Nursa does not seek additional costs beyond the $1,987.50 it identified as fees.[123] The court therefore finds that Nursa's costs are included in that number and awards no extra costs.

### V. The Court Denies Optima's Motion to Stay Because the Court has Denied Optima's Motions to File a Third-Party Complaint and to Extend Fact Discovery.

Optima moves the court to stay the deadlines in this case until pending motions are resolved.[124] "District courts 'have broad discretion in deciding whether to issue a stay of

---

[123] ECF No. 56 at 2 ("Exhibit 1 . . . details the reasonable fees and costs incurred totaling $1,987.50.").

[124] ECF No. 67. Optima filed its motion at 12:59 a.m. on February 18, 2026, one hour after the expert discovery deadline lapsed at 11:59 p.m. February 17, 2026. ECF No. 34 at 7 (adjusted for the President's Day holiday). However, since Optima's motion fails for other reasons and Nursa does not argue untimeliness, the court does not analyze the timing of the motion's filing.

discovery.'"[125] When considering a motion to stay discovery, the court is mindful that "the right to proceed in court should not be denied except under the most extreme circumstances."[126] Accordingly, a party seeking a stay "must make a strong showing of necessity because the relief would severely affect the rights of others."[127] "That is, 'if even a fair possibility exists that the stay would damage another party,' the movant 'must demonstrate a clear case of hardship or inequity.'"[128] Thus, "the party seeking a stay generally faces a difficult burden."[129]

Nursa opposes the motion and argues that a different legal standard applies. Nursa states that a court exercising its discretion to decide whether to grant a motion to stay "is guided by the following factors: (1) a balancing of the prejudice to the parties; (2) whether a grant of the stay request would simplify the issues before the court; and (3) the stage of the litigation."[130] However, "'courts typically look to those factors only when deciding whether to grant a stay

---

[125] *Classic Aviation Holdings LLC v. Harrower*, No. 220-CV-00824-RJS-JCB, 2021 WL 633587, at *2 (D. Utah Feb. 18, 2021) (citation modified) (quoting *White Knuckle, IP, LLC v. Elec. Arts Inc.*, No. 1:15-CV-00036-DN-BCW, 2015 WL 5022579, at *1 (D. Utah Aug. 24, 2015)).

[126] *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) (citation modified); *see also Classic Aviation*, 2021 WL 633587, at *2 (same); *White Knuckle*, 2015 WL 5022579, at *1 (same).

[127] *Commodity Futures*, 713 F.2d at 1484; *see also White Knuckle*, 2015 WL 5022579, at *1 (same); *Classic Aviation*, 2021 WL 633587, at *2.

[128] *Classic Aviation*, 2021 WL 633587, at *2 (quoting *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000)).

[129] *White Knuckle*, 2015 WL 5022579, at *1 (citation modified).

[130] ECF No. 69 at 2 (quoting *Lifetime Prods., Inc. v. Russell Brands, LLC*, No. 1:12-CV-00026-DN, 2013 WL 12182103, at *1 (D. Utah Mar. 5, 2013)).

pending the result of another proceeding.'"[131] As there is no other proceeding here, the court applies the "strong showing of necessity standard" outlined above.[132]

To support its motion, Optima argues that "effectively paus[ing] the commencement of expert discovery" would "avoid starting a potentially expensive and lengthy expert discovery process that may have to be amended, repeated or later stayed should the Court grant one or more of [Optima]'s motions."[133] Optima claims the stay would allow the parties to preserve their options and ability to change course to respond to the court's rulings.[134] Finally, Optima argues that requiring it to continue to pursue expert discovery while motions are pending "could unnecessarily widen the scope of an expert to 'cover their bases.'"[135]

Nursa in opposition argues that a stay would be substantially prejudicial; that expert discovery is unnecessary in a breach-of-contract action; that the pending motions would not impact the scope of expert discovery; and that, as the case is already at the summary judgment stage, Optima's intention is to delay proceedings, which could only serve Optima's interests.[136]

The court finds that Optima has failed to make a strong showing of necessity. This order resolves the bulk of the outstanding motions in this action. Those that remain include Nursa's motion for summary judgment and Optima's motion to stay that motion pursuant to Fed. R. Civ.

---

[131] *Boulder Falcon, LLC v. Brown*, No. 2:22-CV-00042-JNP-JCB, 2022 WL 1202698, at *2 (D. Utah Apr. 22, 2022) (quoting *Classic Aviation*, 2021 WL 633588, at *2).

[132] *Id.* (citation modified).

[133] ECF No. 67 at 2.

[134] *Id.* at 3.

[135] *Id.*

[136] ECF No. 69 at 3-5.

P. 56(d).[137] Neither would benefit from a stay of the expert discovery deadlines. Finally, Optima's argument that the filing of its third-party complaint would require the extension of all deadlines is rendered moot by the court's denial of Optima's motion for leave to file a third-party complaint. In short, there is no need to stay the proceedings while the court decides the pending motions, much less a strong showing of such need. As Optima has failed to demonstrate a need to stay expert discovery deadlines in this action, the court declines to do so.

### ORDER

For the reasons stated above, the court HEREBY ORDERS as follows:

1.  The court DENIES Optima's motion for leave to file a third-party complaint.[138]

2.  The court DENIES Optima's motion to amend the scheduling order.[139]

3.  The court GRANTS IN PART, FINDS AS MOOT IN PART, and DENIES IN PART Nursa's motion for sanctions.[140]

    a.  The court DENIES Nursa's motion for the court to impose dispositive sanctions, to impose potentially dispositive sanctions, and to hold Optima in contempt.

    b.  The court FINDS AS MOOT Nursa's motion to prohibit Optima from engaging in additional discovery.

    c.  The court GRANTS Nursa's motion for attorney's fees and costs associated with Optima's failure to comply with the Discovery Order.

---

[137] ECF Nos. 30 and 42.

[138] ECF No. 48.

[139] ECF No. 49.

[140] ECF No. 55.

4.  The court GRANTS Nursa's motion for attorney's fees related to the Discovery Order in the amount of $1,987.50.[141]

5.  The court HEREBY ORDERS Nursa to submit briefing within 14 days after the date of this order detailing the attorney's fees and costs associated with Optima's failure to comply with the Discovery Order. This briefing must contain the information the court requires to conduct a lodestar analysis.

6.  The court DENIES Optima's motion to stay pending deadlines.[142]

7.  The court warns Optima that further noncompliance with this court's orders will result in additional sanctions, potentially including entry of default judgment.

IT IS SO ORDERED.

DATED this 1st day of April 2026.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[141] ECF No. 56.

[142] ECF No. 67.